Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial, and Service Workers International Union. Ms. Patti, before the clock starts, does that moniker hold the record for the most words in any one consolidated union, to your knowledge? Well, that's what we're aiming for, Your Honor. But we will go by the name of the United Steel Workers, with the Court's permission. United Steel Workers. Thank you. That'll make it much easier for us. Thank you very much. Ms. Patti, you may begin. Thank you. May it please the Court, my name is Mariana Fideas, and I represent Appellant United Steel Workers and its local 1138-4. With the Court's permission, I'd like to reserve three minutes for rebuttal. Granted. This case is about whether an arbitrator acted within his authority and construed the underlying contract when, after analyzing the contract's language and finding it ambiguous and finding that it did not reserve the specific right to schedule to management, he used extrinsic evidence to come to a decision. This Court should reverse the lower court's vacation of the arbitration award because, first, the arbitrator's award drew its essence from the underlying contract, and second, the arbitrator acted within his authority when he made the protest of the maintenance clerk not being allowed to work weekend overtime with the maintenance department. The union alleged that this violated a past practice, and the company denied the grievances. All three grievances went to arbitration, where the parties agreed they all had to do with the same issue, the issue of past practice, whether it had been established and whether it had been violated. The company argued, throughout the grievance procedure and at the arbitration hearing, that a past practice could not exist under the contract. The arbitrator, when he came to his decision, found, however, that a past practice could exist, that it had been established, and that it had been violated. We're familiar with the procedural history. Why don't you tell us why the district court erred when it held that the arbitrator's decision did not draw its essence from the agreement? The district court erred because the district court interpreted the contract himself, and that is not what courts are supposed to do. The district court found that there was an exclusive right to schedule in the management's rights clause, which is Section 3, and in the scheduling clause, which is Section 9. Neither of those clauses specifically say That's what the arbitrator found, and it's the arbitrator's decision that the parties bargained for, not for the district court's decision. How do we know what the arbitrator thought about Section 9? Well, the arbitrator, it's true, did not say anything specifically about Section 9, but he did have the entire contract in front of him, and he did look at the evidence that was presented to him by the grievances and by the party. When the court can come up with a rational explanation for the arbitrator's decision without looking at Section 9, that should be enforced. Here, Section 9, if we look at it, doesn't specifically speak to the right to schedule overtime. What Section 9 talks about is in Section 9A, the normal hours of work. It's a 40-hour work week Monday through Friday. That's not the situation we have here. Section 9B, and both of these were dependent upon heavily by the district court and not at all by the company during the grievance procedure. So we have no evidence that the arbitrator was even presented with this except for one instance in the second step answer to the second and third grievances when the employer brought up Section 9B. Section 9B also has nothing to do with scheduling weekend overtime. What Section 9B talks about is that if you get called into work and there's no work, you get four hours reporting pay. Section 9B also says that if the company, the company does not have to post a schedule different from the norm if it, the company only has to post schedules that are different from the norm. Section 9B-3 says that employees should try their best to inform the employer when they're going to be absent or late. And Section 9B-4 says that if weekend work is scheduled, it should be scheduled Wednesday by noon. None of this has to do with what to do if the maintenance clerk is supposed to, if the maintenance, if the weekend crew, sorry, if the maintenance department is scheduled for weekend overtime and the maintenance crew, the maintenance clerk comes in as has been done in the past and had been done over two, at least two collective bargaining agreements. And then a supervisor is performing bargaining unit work. You, you're arguing that the arbitrator's award does draw its essence from the collective bargaining agreement, as I understand you to say that. Correct, Your Honor. And in what case, what case does that come from? The drawing the essence? Yes. It comes from Enterprise Wheel from the Steelworkers Trilogy. But this court, in your opinion, Judge Alderson and Ludwig Honnold, elucidated that standard saying that a collective bargaining agreement, an arbitration award derives its essence from a collective bargaining agreement when the interpretation can in any rational way be derived. That's the sole purpose that I asked the question because I wrote that decision 44 years ago. That's a long time. It is a long time and it remains good law. Well, it has remained good law because it was good law. I wholeheartedly agree, Your Honor. This court too in Brentwood Medical Associates helped elucidate the standard even further saying that the amount of rationality required in an arbitrator's interpretation is minimum. And this court in Arco Palmers said if the award can possibly derive from the interpretation and application of the contract, courts are precluded from refusing to enforce. Is that true even if we're convinced that the arbitrator ignored a portion of the contract? Let's say we were satisfied that for whatever reason the arbitrator just didn't even realize there was Section 9. Would we still have to defer to the arbitrator's ruling? If Section 9's language were clear about this specific right to schedule, which I think it is not, then there would be more of an argument that the arbitrator ignored the language. But the arbitrator too can relax the, can deviate from the plain meaning of a contract if the language is relaxed by prior practice. That's from this court in NF&M Corporation. So I think here it's clear that the arbitrator looked at Section 3, the management rights. It says nothing about the specific right to schedule. It says direct the workforce, but the arbitrator, a reasonable interpretation of the arbitrator's award is that direct the workforce means you get to say what duties the employees carry out. That's clearly not what the district court thought, but that's not the decision that the parties bargained for. Section 2, the alleged zipper clause, is ambiguous, requiring a written signature from only one party. Given these together. That's not an ambiguity problem, is it? It might be an enforceability problem. Right. It's not ambiguous. We know what it says. It just says one signature is required. Yes. And I think the arbitrator said it was somewhat ambiguous because it is somewhat ambiguous whether it means to be the zipper clause that the company purports it to be. The company at the arbitration hearing said that the Section 2 prohibited past practices. And the arbitrator found it didn't. Not only that, but it was not a specific affirmation of management. It was not a specific affirmation that management rights are not limited by prior practices. And I think these things taken together, along with the actual prior practice of the letting the maintenance clerk work and the fact that this contract lacks language that limits an arbitrator's authority, which is present in other contracts, especially those cited by my opponent in his response brief, the parties got what they bargained for. The arbitrator was not making a decision that was in manifest disregard of the contract. It was not totally unsupportive. Let me add this. Judge, I'll just say it again. The basic concept of arbitration is the parties want to avoid using the courts. And I'm going to ask several questions. May a reviewing court vacate an award because it disagrees with a precept of law articulated by the arbitrator? No, Your Honor. Okay, so you're basing that, of course, on the concept that when the parties agree to an arbitration in an agreement, they are asking an arbitrator to decide the law and the facts. Is that not the basic concept of arbitration? That is exactly it, Your Honor. I know that's generally the concept in labor law. And it is also the concept in the Federal Arbitration Act, rather than, say, Pennsylvania commercial arbitration, which is a uniform commercial code, a uniform arbitration act. So I think what we are here, we have to concentrate on labor arbitration. I just want to get that clear. Okay. Duly noted, Your Honor. The arbitrator here was also acting within the scope of authority that was given to him by the contract, which does not specifically limit his authority, and by the issues submitted. The district court found, and my opponent argues, that the arbitrator in deciding this past practice issue was acting beyond the bounds of his authority. The contract, as I stated before, does not have a clause that states the arbitrator cannot alter, modify, or amend the contract. Furthermore, as Judge Aldersert wrote in High Concrete Structures, the parties can empower an arbitrator to go beyond the four corners of a contract. And what the court looks to to determine this authority is the submission, the grievances submitted to the arbitrator for a decision. A court should defer to an arbitrator's interpretation of the scope of the issues submitted with the same level of deference it gives his actual award, which is to say, if the arbitrator is even arguably construing or applying the award, or the issues submitted to him, it should be enforced and not reversed by a court. Here, the past practice issue, as I stated, had been alleged since the very beginning, and three members of the company's management responded to the past practice issue. All three were at the arbitration hearing, and none of them there objected to the arbitrator's authority. Because of this failure to object, they've also waived consideration of that issue here. Did the arbitrator ever indicate how he was going to frame the issue before the written opinion was issued? I don't know, Your Honor. But he did. The issue he came up with does reflect the grievances presented to him. Now, when we're talking about going back to Ludwig Honnold, my case, where I was quoting the Steelworkers Trilogy, when we refer to the law of the shop, law of the shop is the expression, you can revoke the award only where there's a manifest disregard of the agreement totally unsupported by principles of contract construction and the law of the shop may a reviewing court disturb the award. Now, when we talk about the law of the shop, doesn't that subsume past practices? Yes, Your Honor. And the arbitrator did consult industrial common law by looking at previous arbitrators' awards and how they defined past practice. He applied those principles, found a past practice, and found that a past practice had been violated in this case. Even if the contract says that everything needs to be in writing? But the contract, I think this is where the ambiguity of the arbitrator's belief and the ambiguity of that Section 2 zipper clause comes in. For an agreement to be in writing but only signed by one party didn't make sense to the arbitrator and that's a rational construction of the contract and that's the level, the standard of review this court should be applying to the arbitrator's award. All right, let me give you a hypothetical. That's a good answer on the facts of this case, but I'm curious about the larger picture here. If both sides signed a contract and the contract was fully integrated and said that this contract is in writing and there will be no other side agreements other than those that come after it in writing, any modification to this written document has to be in writing. Can an arbitrator then resort to past practice in order to render an award, even in spite of that sort of language? Hypothetically, I think it would depend on if the past practice continued within the term of the new collective bargaining agreement, which here it continues over to. Because then it's not a past practice, it's an ongoing practice or a current practice. Right, and the party's actions in some way would require relaxation of the literal language of the contract since their actions of continuing the past practice in spite of the zipper clause, a valid zipper clause within the contract would show that their intent in the contract is not what they actually meant. But a case for vacating the award in the face of language like that would be stronger than the case we have here. Okay. Thank you, Ms. Patias. We'll hear you on rebuttal. Mr. Kordacki? Thank you, Your Honor. Good morning. Sorry to hold us, sir, and good afternoon to the court. May it please the court, my name is Kenneth Kordacki, and I'm appearing for the Applee-Ockers National Role Company. After going through the arbitration, the district court proceedings, and extensive briefing before this court, today is the first day or the first time that the union has actually addressed or given an opinion as far as what the effect of Sections 3 and 9 are on the grievances, and quite frankly, the response is wholly unfulfilling. The sections that deal with scheduling are clear and unambiguous. The parties expressly negotiated that the employee's normal work week is 40 hours per week, scheduled on five consecutive days from Monday through Friday, 9 to 5. That is what the parties bargained for when Mr. Lubick, as the maintenance clerk, the schedule that he was expected to maintain as an employee covered under the agreement. The union did not argue, and the arbitrator did not find that the provisions were ambiguous or otherwise unclear. The reason that's important is that the grievances directly implicate these provisions. What Mr. Lubick and the union were contending at the arbitration level was that he had free range to work on weekends, even if Ockers, as his employer, determined that he was not necessary or that his services were not needed at the plant on the weekend hours, simply because other covered employees, in this case the maintenance crew, either a full or a partial crew, without regard to how many maintenance members were required, Mr. Lubick and the union took the position that so long as one of them is there, whether or not Ockers scheduled Mr. Lubick, he should be there as well. He says there was a past practice of that, though, does he not? Well, the past practice, the union jumped directly to the issue of the past practice, and I think it's telling that at the arbitration level the union did not identify a single provision of the CBA which it contended that Ockers violated, because it couldn't. Section 9 on scheduling is so clear and so direct in controlling that the union had to bypass it, the arbitrator certainly didn't, but he did, the union had to bypass it and go directly to an alleged past practice in order to shoehorn the claim of the grievance into the terms of the CBA. But did you raise Section 9 in front of the arbitrator? My understanding is you first raised it in the district court. Respectfully, Your Honor, I was not involved at the arbitration level, so I am left, as is the court, with the arbitrator's description through the award of what exactly the positions of the parties were. But there are a couple of things that answer the court's inquiry. First of all, there's a judicial admission in this case that Ockers defended each of the grievances on the basis that the CBA gave it the express right to schedule, and that is found in the record on page 22. It was paragraph 11 of Ockers' complaint, whereby Ockers alleged that it defended the grievances on the basis that it had the right under the CBA to schedule employee working hours. So that issue was joined in front of the arbitrator? Correct, Your Honor. And you're claiming now that the union's counter to that was past practice, that the past practice informed the arbitrator's interpretation of the agreement? Well, the union certainly, as the grieving party, had the first opportunity to frame the issue as it saw fit, as far as what it wanted or what it was arguing before the arbitrator. But they're taking the position that because they instilled the issue of past practice directly into the forefront, that Ockers is somehow obligated to agree that past practice should be the only thing that was decided by the arbitrator, the only thing that is relevant to the arbitrator. And that certainly isn't the case when you look at even the arbitrator's, in the arbitrator's award, the recitation of the grievances and the first, second, third level answers that were filed by Ockers. They refer to Section 9 scheduling not as, granted, not as directly as we've made it an issue before the district court. But they cited Schedule 3, the Management Rights Clause, and they incorporated all applicable sections of the CBA in defining the response to the grievance that was put forth by the union. Mr. Kornacki, I'm listening to this with great interest, but I'm just wondering when you're going to get to the law of arbitration. Your company signed a collective bargaining agreement that called for the use of an arbitrator to settle dispute. Is that right? That is correct. And you agreed to have the arbitrator perform the general functions of an arbitrator. Is that right? I would agree with that statement. Yes, sir. And generally, an arbitrator decides because the whole purpose of arbitration is to avoid the expense and delay of the courts. Would you concede that that's the issue? That is a stated policy reason. Yes, sir. All right. All right. Well, then then what we do have is a situation of your company and the district court disagreeing with the articulation of the law and the facts found by the arbitrator. That being the case, by what right does this district court have to vacate that award? I'm sorry to interrupt. I mean, you have to show you have to show that the arbitrator decision did not did not draw the award, did not draw its essence from the collective bargaining agreement. Here we have an arbitrator interpreting this labor agreement and the district court disagrees with the interpretation. But the parties agreed on the arbitrator to make that interpretation. Isn't that right? I respectfully disagree, sir. We're OK. Hawkers is not contending that this is that they're not challenging the arbitrator's interpretation of the CBA at a high level. The issue that the company takes with the award, and this is supported by case law that honestly goes back to to your decision in the Ludwood case, Your Honor, that the when the arbitrator shows a manifest disregard for the plain and unambiguous terms of the contract of the agreement, that is where the court draws its authority to stop and step in and say, right? The arbitrator was arbitrators are tasked with interpreting the agreement. They're not tasked with finding out what is fundamentally fair in their in their sole discretion. And when the arbitrator ignores a controlling provision of the agreement, that is where the courts have been legion in holding. They've gone beyond their authority. And the narrow standard. What is the controlling? What control? What are you referring to in the CBA as the controlling part of it? And that, Your Honor, is where we go back to section nine, because it does. When the parties bargained for what would constitute the normal work week for the covered employees, it was clear. It was nine to five, Monday through Friday, five consecutive days. And that's section 9A1 of the CBA titled Normal Work Hours. Section 9B, which is titled Scheduling, goes on to read that if an employee is requested to work outside his regularly scheduled work week, and whether or not work is available, he shall receive a minimum of four hours reporting pay at the employee's applicable pay rate. The predicate phrase of that provision couldn't be more clear. It's occurs, has the right. How did the arbitrator interpret that? He did not, Your Honor. He completely ignored it. And that is why. And that's what the district court found, is that there was an unambiguous provision before the arbitrator concerning scheduling, concerning when a covered employee has the right to work overtime at the time and a half rate. But then the union argued that the company had a history and a practice of allowing Mr. Lubick to always be there whenever some of the maintenance workers were there. And he, as I understand the essence of his argument, it's, you guys can't change the rules of the game on me midstream without doing something explicit. Isn't that what he's arguing, is that he's entitled to continue on as he had in the past, showing up on weekends when the maintenance workers were there. But what, that is what he's arguing, Your Honor. But the law requires the arbitrator to take a contract as the parties negotiated, as the parties founded. It was a negotiated right that it was so clear and unambiguous that, and I'll get to the zipper clause in a second as far as how that plays into it. But when the unambiguous provision of the contract is controlling, I am aware of no case law which allows an arbitrator to go beyond the four corners of the agreement in the face of an admittedly unambiguous provision to expand or to alter or amend the rights of the parties as they negotiated them. Well, you say it's unambiguous. Isn't the answer to that, Counselor, that what we talk about is that principles of contract construction, which you are insisting on by emphasizing so much Section 9, and the law of the shop, the law of the shop, that was a keystone of the steelworkers' discussion. And the law of the shop here involves past practices. And the CDA does speak to what is an enforceable part of the agreement. I will concede that. So you're moving away from the law of the shop to contract interpretation. Well, respectfully, Your Honor, I don't think that the two can be completely divorced. All right. Because when you are considering the negotiated rights of the parties, you have to assume that the union takes the company to task to not having a more robust or a more comprehensive zipper clause. But the same could be said as far as turn the tables on the union as far as their negotiated representation as it applies to this agreement to say, if there were past practices that they were relying on, they should have been recognized in the agreement. Otherwise, we're left with the provisions regarding scheduling, the zipper clause, which says that agreements, in order to be enforceable or to modify the contract, that they must be in writing. And there is another provision that we haven't talked about that, at least on its edges, talks about modifying the agreement. And that's the termination provision of the agreement. That's Section 19, whereby the parties agree that the provisions of the agreement are effective September 1, 2008, and shall continue in full force and effect until February 29, 2012. It goes on to say that either party can submit written notice asking for modification of the agreement after December 31, 2011. So there are other portions of the CBA which implicate or which involve parties asking for written modification of the contract. Let's come back to Section 9. In order for us to affirm the district court, do we have to agree with you that Section 9 is unambiguous? I would say that is a correct statement, Your Honor. All right. So then you've alluded to it as admittedly unambiguous and couldn't be clearer. You were talking about 9b. Help me understand how we could come to that conclusion. Where does it talk about the company has unfettered discretion to schedule folks for overtime, for instance? Well, I would direct the Court to the predicate phrase of 9b, where it says, if an employee is requested to work outside his regularly scheduled work week, certainly the implication is that the employee has to be asked or scheduled to work overtime in order for overtime to be recoverable or for him or her to appear at the shop in order to work. But there is an additional section, and it doesn't have a numbered section, but it appears on page 55 of the reproduced record, whereby it says nothing in the agreement shall restrict the company's author's right to require that an employee work overtime in accordance with the applicable section of the current contract. That was cited in our brief as well, and it appears in the record on page 55. So there is yet another provision in the agreement which recognizes that it's author's right to require employees to work overtime. And your position is that is so clear and unambiguous that it's error to even look at whether there are past practices. That, Your Honor, yes. And we also have the management's rights clause, which in general terms allows the company to direct the workforce. We didn't even have time to get into that. But the contract, the CBA taken as a whole, certainly recognizes that it's author's right to schedule overtime and that employees cannot self-schedule based on what they contend are past practices. And are you saying that's the upshot of the arbitrator's decision, that Mr. Lubick can come and go as he pleases on the weekend? Absolutely. Absolutely. As long as there are other maintenance staff. He can't show up as a maintenance clerk of one. There has to be some maintenance workers scheduled that weekend. That is correct, Your Honor, as long as there's at least one. But you're telling us that as long as at least one maintenance worker shows up, Lubick can come and go depending on whether the weather's bad or whether he'd rather go fishing that weekend and the company has no control over whether he's there or not on the weekends? That's absolutely correct, Your Honor. The arbitration were taken to its conclusion, and it's not even extrapolating from the agreement. It's right there in the terms of the award that that is the effect of what the finding is. Couldn't the company do something about that? Couldn't you bring in action against him? I think it's safe to assume that would be an untenable position for the company if Lubick just were to show up at his own discretion. Wouldn't you have some ability to try to prevent that post hoc? Respectfully, I think that's why we're here, is to put the check rein, and that's Judge Aldister's description from the holding case, about how the courts have the ability to look at what an arbitrator did. And if it's so out of bounds as far as if it shows a manifest disregard for the agreement, that's the recourse that we have, Your Honor. Well, what we have here, sir, is the situation. This might be the company does not agree with the arbitrator, but they signed an agreement saying that for these matters, we are yielding to an arbitrator and not a court to decide the law and the facts of this grievance. I see that I'm out of time. May I respond? Thank you. Yeah. This is not an issue. We're not challenging an interpretation. The arbitrator, and this is where the union has muddied the issue as far as what they're drawing on the manifest disregard of the agreement or trying to draw the essence in arguing that the award is drawn from the essence of the agreement. They're jumping right to the zipper clause as far as saying, when presented with the issue of what provision of the agreement are you relying on to say that this award draws its essence from the agreement, they jump right to the zipper clause. They completely ignore Section 3. They completely ignore Section 9. And what they're in essence arguing is because the zipper clause is silent on the issue of past practice, that the arbitrator can seize upon that language and has the unfettered right to ignore other directly controlling provisions of the agreement. That's not the law. The law as far as manifest disregard of the agreement gives this court, gives the district court, which exercises right and gives this court the right to look to the CBA to say, if there's a controlling provision, if there is something that addresses the rights of the parties as brought forth under the grievance and the arbitrator shows a manifest disregard of that provision, that you have the right, I would go so far as to say the duty to be that check reign on the arbitrator because the parties at their base, at their essence, retain the arbitrator to apply the terms of the CBA. It's not to modify the terms of the CBA. It's not to amend or say take the CBA as he or she finds it and say that this is something that's fundamentally unfair. And in this instance, I think that's exactly what the arbitrator did. Thank you, Mr. Kornacki. Thank you. Rebuttal, Ms. Patias. Ms. Patias. I think it's clear that the parties disagree about what Section 9 means and what Section 3 means, and this is why we went to arbitration in the first place. The company here is stating that the – But if that were true, shouldn't the arbitrator have at least adverted to Section 9? Well, I don't think there's any – there's nothing to show that the arbitrator didn't think about Section 9 in making his award, and certainly there are ways to rationally draw his ultimate decision, even if you consider Section 9. I think this is a little bit similar to Brentwood Medical Associates, where an arbitrator's award was enforced even when the arbitrator cited language that did not exist in the contract. And the court upheld the award because that citing to imaginary language didn't taint the award. Here, the company convinced the district court to get – to vacate the arbitrator's award on language that likewise doesn't exist. If it were so clear to have the right to schedule, then the – You're saying he can schedule himself? It really strikes me as odd. Right. Mr. Lubick can just show up on weekends and collect time and a half whenever he pleases, as long as some of the maintenance staff are there? I mean, that's the past practice that was established, and it's a past practice – The worry here is that he can do whatever he wants just because he says it's a past practice. And I don't think that's entirely true. The company could have stopped the practice when the CBA – the contract that this fell under went into effect. The company could have bargained for a better management's rights clause or a better zipper clause, or they could have simply objected to the arbitrator's authority to hear the past practice issue at the arbitration hearing. It did none of those things. Well, he certainly has a right to argue past practice, right? Correct. I mean, they would have no cause to object to that. But what they're saying is – I thought their objection is you can talk past practices all you want, you can talk law of the shop, but take a look at these other provisions of the agreement, which indicate that the company decides to schedule. The workers don't schedule themselves. The company schedules the workers. That seems like a rather unremarkable proposition in this realm, is it not? It is not, except in many collective bargaining agreements, the management's rights clause specifically has the right to schedule those words. And I think when the company argues that the arbitrator exceeded his authority by ignoring the language, what they're really saying is the arbitrator misinterpreted the language and we accidentally set up this past practice and we are unhappy with the result and we'd like to go to court to remedy it. But the arbitrator's decision is what we bargained for. It is what the union gave up the right to strike for, to have arbitration in the contract. And this award is simply not in manifest disregard of the underlying contract. If there's no further questions. No, thank you, Ms. Patias. Thank you. Thank you, Mr. Kornacki. The case was very well briefed and argued. The court will take the matter under advisory.